# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) Case No. 09-2406 (BWB) |
| | ) (Jointly Administered) |
| XMH CORP. 1 | ) |
| (f/k/a Hartmarx Corp.), *et al.*, | ) Chapter 11 |
| | ) |
| Debtors. | ) |
| | ) |
| Hartmarx Corp., *et al.*, | ) |
| | ) |
| Debtors-Appellants, | ) |
| | ) No. 09 C 5406 |
| v. | ) |
| | ) The Honorable William J. Hibbler |
| Western Glove Works, | ) |
| | ) |
| Appellee. | ) |

## MEMORANDUM OPINION AND ORDER

This is an appeal from an order of the Bankruptcy Court of the Northern District of Illinois sustaining Appellee Western Glove Works' ("WGW") objection to a portion of an agreement between a group of businesses, including Emerisque Brands UK Limited and SKNL North America, B.V. (the "Purchasers"), and the Debtors. That agreement (the "Sale Agreement") concerns the purchase of substantially all of the Debtors' assets by the Purchasers, and calls for the assignment of an agreement (the "WGW Agreement") between WGW and one of the Debtors, Simply Blue Apparel, Inc. ("Simply Blue"). WGW objected to the WGW Agreement's assignment, arguing that it was a trademark licensing agreement and that it was therefore not assignable without WGW's consent under 11 U.S.C. § 365(c). The Debtors appealed the Bankruptcy Court's July 16, 2009 order sustaining that objection. Meanwhile, Debtors and the Purchasers continued to negotiate their agreement for the purchase of

1

substantially all of the Debtors' assets. They closed that transaction on August 7, 2009, after Purchasers agreed to take responsibility for litigating this appeal. The Purchasers now move to intervene as Co-Appellants to the instant appeal. WGW opposes that motion, and moves for dismissal of the appeal instead. For the reasons set forth below, the Court GRANTS the Purchasers' motion to intervene as Co-Appellants, DENIES WGW's motion to dismiss the appeal, and reverses the order of the Bankruptcy Court on appeal. The Court remands the case to the Bankruptcy Court for further proceedings.

## *PROCEDURAL BACKGROUND*

Debtors filed voluntary petitions in the Bankruptcy Court for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* They were manufacturers and marketers of apparel. On May 21, 2009, the Debtors filed a motion seeking approval of a sale of substantially all of their assets to the Purchasers. That sale was to include the assignment of the WGW Agreement, an agreement between WGW and Debtor Simply Blue. Thus, the Debtors also filed a notice of the asserted cure amount with respect to the WGW Agreement and a notice of the Debtors' intent to assume and assign the WGW Agreement to the Purchasers under Section 365 of the Bankruptcy Code. WGW objected to the motion and both notices and asserted: (1) the WGW Agreement was a trademark license agreement; (2) as a trademark license agreement, the WGW Agreement was not assignable to the Purchasers without WGW's consent under Section 365(c) of the Bankruptcy Code; and (3) WGW did not, and would never, give its consent to the assignment of the WGW Agreement to the Purchasers. The Debtors responded to WGW's objections, but the Purchasers did not. Based on the plain language of the agreement (without considering any extrinsic evidence), the Bankruptcy Court sustained WGW's objections and

ruled that the WGW Agreement could not be assigned to the Purchasers. The Debtors appealed the Bankruptcy Court's decision. The Purchasers did not.

Despite the Bankruptcy Court's ruling, the Debtors and Purchasers were able to close on the sale of substantially all of the Debtors' assets on August 7, 2009. In order to come to their final agreement, the parties excluded the assignment of the WGW Agreement from the Sale Agreement. However, the Purchasers purchased the right to "direct [Debtors] to assume and assign the [WGW Agreement] to Purchasers or their designee" if this appeal was successful. They also purchased all of the Debtors' rights to litigate any issues related to the WGW Agreement. Based on those provisions of the Sale Agreement, the Purchasers now seek leave to intervene as Co-Appellants in this case and to file their opening brief in the appeal *nunc pro tunc* as of September 16, 2009. WGW opposes that motion, and moves the Court to dismiss the appeal instead, arguing that neither the Purchasers nor the Debtors have standing.

## *DISCUSSION*

### I. Motion to intervene and motion to dismiss

WGW makes a number of arguments about why the Purchasers should not be allowed to intervene in this case. First, they argue that the Purchasers have waived their right to appeal by failing to get involved in the litigation concerning the WGW Agreement at an earlier date. Second, they argue that the Court should not allow the Purchasers to "resurrect" their standing by taking over Debtors' interests in the appeal. Finally, they argue that the Purchasers are not able to pursue the appeal in the Debtors' place because the Debtors no longer have standing to pursue the appeal. For this same reason, WGW argues that the appeal should be dismissed.

The Court can easily dispose of WGW's first argument because the Purchasers do not appear to be pursuing this appeal in their own right. Instead, they argue that they obtained the

3

right to litigate the appeal on Debtors' behalf through the Sale Agreement. Thus, there is no need to determine whether Purchasers waived their right to appeal the case.

However, this first argument does raise another issue that is not addressed directly by either party. The Purchasers seek leave to intervene as co-appellants. However, both parties indicate that if the Purchasers are allowed to proceed on appeal, it should be because they have taken over at least some portion of the Debtors' interest in the appeal. Thus, the Court finds the motion more akin to a motion to substitute or join the Purchasers as a party to the appeal. The Court therefore interprets the motion as a request for such relief under Federal Rule of Bankruptcy Procedure 7025, which in turn references Federal Rule of Civil Procedure 25. Rule 25(c) provides for permissive substitution or joinder when an interest is transferred.

In support of its second argument, WGW points to precedents that it believes cast doubt on a party's ability to "resurrect" standing that it previously waived via assignment. *See Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.)*, 151 F.3d 605, 610 (7th Cir. 1998); *Fairly Bike Mfg. Co., Ltd. v. Schwinn Planning Comm. (In re Schwinn Bicycle Co.)*, 209 B.R. 887, 892-93 (N.D. Ill. 1997). WGW devotes a few words to this argument, stating only that it is "highly doubtful" that the Purchasers can resurrect standing. Perhaps this is because neither case WGW cites stands for the proposition that WGW now asserts. *Schwinn Bicycle* stands for the rather unremarkable proposition that a party that has previously forgone its opportunity to litigate an issue does not have standing to litigate the issue on appeal. 209 B.R. at 892-93. However, it says nothing of that party's ability to litigate in another party's shoes if it purchases that right from the other party. *Cult Awareness Network*, on the other hand, confirms the well-established rule that in a bankruptcy appeal, a party lacks standing unless it has a real pecuniary interest in the outcome of the appeal. 151 F.3d at 610. However, it does not explain

4

why a party's real pecuniary interest is any less real when it was obtained from another party. To the contrary, as noted above, the Bankruptcy Rules reference the general rule governing substitution upon a transfer of interest in civil cases. *See* Fed. R. Bankr. P. 7025 (citing Fed. R. Civ. P. 25). Thus, these cases do not cast doubt on the Purchasers' standing, even assuming for the moment that the Purchasers did in fact waive a pre-existing right to appeal in their own right.

WGW's final argument is that the Purchasers cannot achieve standing by stepping into Debtors' shoes because Debtors no longer have standing to pursue this appeal themselves. WGW rightly points out that a party only has standing to appeal the order of a bankruptcy court if the order had an adverse pecuniary impact on the party. *See Cult Awareness Network*, 151 F.3d at 607. WGW concedes that when the Debtors first filed their appeal, they had standing. However, they argue that because the Purchasers have taken on the risks of the litigation and the Sale Agreement has been executed, the Debtors no longer have a stake in the outcome of the appeal. The Purchasers take issue with that contention.

However, assuming for the moment that WGW is correct, the fact is that the Debtors lost their interest in the litigation only by virtue of the Sale Agreement, which provided for the transfer of that interest to the Purchasers. While WGW is correct that a party must maintain standing throughout the course of litigation in order to avoid dismissal, *Laskowski v. Spellings*, 546 F.3d 822, 824 (7th Cir. 2008), that principle does not require dismissal in this appeal. If it did, then no litigation would ever survive a complete transfer of the plaintiff's or appellant's interests. That is clearly not the case, as the Federal Rules of Civil Procedure provide for substitution of the transferee as a party. *See* Fed. R. Civ. P. 25(c).

Thus, the Court holds that the Purchasers do have standing to pursue this appeal in the shoes of the Debtors. The parties' dispute over whether the Debtors still have standing in this

5

case is still of some limited relevance, however, because the Court must decide whether to join the Purchasers as a party or substitute them in the place of the Debtors. *See* Fed. R. Civ. P. 25(c). Purchasers correctly argue that if the appeal fails, the Debtors will retain possession of the WGW Agreement as an asset. Thus, the Purchasers contend that the Debtors still have a pecuniary interest in the appeal. WGW points out, on the other hand, that the Debtors are clearly unable to cure the default on the WGW Agreement, and states that it will not pursue any rejection damages if the Debtors reject the WGW Agreement. Thus, WGW argues that the Debtors have no financial stake in the WGW Agreement even if it is their asset. The Court finds that WGW's argument has merit, and also notes that the Debtors previously represented to the Bankruptcy Court that the appeal would have little or no impact on their estates. (Bankr. R. Doc. 866 ¶ 11.) Moreover, the Debtors appear to have transferred all of their interests in any litigation involving the WGW Agreement to the Purchasers. Thus, the Court grants the Purchasers' motion, but interprets it as a motion for substitution under Rule 7025, and substitutes the Purchasers for the Debtors as a party to this appeal. Having found that the Purchasers have standing to proceed, the Court also denies WGW's motion to dismiss.

## II. Merits of the Appeal

Having resolved the parties' motions, the Court turns to the merits of the appeal. The primary issue on appeal is whether the WGW Agreement is a trademark license agreement. The parties also briefed the issue of whether a trademark license agreement is assignable. However, because the Court holds that the WGW Agreement no longer operates as a trademark license agreement, the Court need not address that secondary issue.

## A. Standard of review

The parties dispute whether the Court should conduct *de novo* review of the Bankruptcy Court's decision or review the decision for clear error. The Purchasers argue that because the Bankruptcy Court decided the issue based on the language of the WGW Agreement without reference to extrinsic evidence, the appeal presents questions of law alone and *de novo* review is appropriate. The Purchasers are no doubt correct that questions of contract interpretation that do not require consideration of extrinsic evidence are pure questions of law subject to *de novo* review. *Coplay Cement Co., Inc. v. Willis & Paul Group*, 983 F.2d 1435, 1438 (7th Cir. 1993).

WGW counters by arguing that cases where a court must consider the interplay of multiple documents present factual questions. *Cook Inc. v. Boston Scientific Corp.*, 333 F.3d 737, 742 (7th Cir. 2003). WGW argues that this is just that sort of case because the WGW Agreement includes the original contract, two amendments, and a letter of intent. Cases such as *Cook* certainly provide support for WGW's position. However, there does seem to be some tension in the case law about whether the principle in that case is applicable in cases where reference to extrinsic evidence is unnecessary. *See, e.g., Dugan v. R.J. Corman R. Co.*, 344 F.3d 662, 665 (7th Cir. 2003) (citing *Cook*); *see also Coplay Cement*, 983 F.2d at 1438. Nonetheless, resolution of this grey area in the case law is not necessary because the Court finds that the Bankruptcy Court's decision should be reversed under either standard as it is contrary to the plain language of the WGW Agreement.

## B. The terms of the WGW Agreement

In December 2002 WGW entered into a trademark license agreement with JAG Licensing LLC. (Bankr. R. Doc. 174-1.) Under that agreement, JAG granted WGW a license to use JAG's trademarks in the manufacture and sale of women's jeans. (*Id.* at ¶ 2.1.) JAG also

7

gave WGW the authority to grant sublicenses to Seymour J. Blue, LLC and it successors and assigns. (*Id.* at ¶ 2.2 & Schedule B.) That same day, WGW and Seymour J. Blue entered into the WGW Agreement. (Bankr. R. Doc. 174-2.) Simply Blue is Seymour J. Blue's successor, and for simplicity's sake both companies will be referred to as Simply Blue for the remainder of the opinion.

There is no dispute that the WGW Agreement provided a trademark sublicense to Simply Blue for some period of time. Using that sublicense, Simply Blue was to "design, source and sell, for its own account, womens' [sic] jeanswear bearing the Trademark." (*Id.* at ¶ 1.3.) In return, Simply Blue agreed to pay WGW a licensing fee. (*Id.* at ¶ 2.1.) However, the original terms of the agreement state that the license is

> effective during the remaining months of 2002. Thereafter, for the remaining term of the Agreement, SJB shall provide designs and certain services to [WGW] for a fee, and [WGW] shall sell apparel bearing the Trademark for [WGW's] own account.

(*Id.* at ¶ 1.3.) Thus, the contract makes very clear that the sublicense was effective only for the remaining months of 2002. In 2003, the relationship between the parties converted to one whereby Simply Blue provided designing, sourcing, marketing, sales, merchandising, and customer services to WGW in return for a fee. (*Id.* at ¶ 3.1.) That relationship was to continue from January 1, 2003 through the end of 2006 on substantially the same terms, with slight changes to the fee in the later years. (*Id.* at ¶¶ 3-5.) Then, Simply Blue had the right to renew the agreement "for an additional four year period commencing January 1, 2007…under the same terms and conditions as were applicable for the years 2005 and 2006." (*Id.* at ¶ 7.)

WGW and Simply Blue later entered into an amendment to the WGW Agreement (the "First Amendment"). (Bankr. R. Doc. 174-3.) The First Amendment set forth a new arrangement "[i]n lieu of the arrangement set forth in the Agreement with respect to the January

8

1 to June 30, 2003, time period." (*Id.* at ¶ 1.) Under that new arrangement, Simply Blue was to continue to sell trademarked apparel as a licensee of WGW and pay a license fee for that right. (*Id.* at ¶ 1.1.) However, all of the terms and conditions previously effective as of January 1, 2003 were to become effective July 1, 2003. (*Id.* at ¶ 2.) All of the changes in the services fee, the contract's expiration date, and the renewal period were all also pushed back six months. (*Id.*) WGW and Simply Blue later amended the agreement a second time. In that Second Amendment, the parties make some irrelevant changes to the calculation of the service fee WGW was to pay to Simply Blue. (Bankr. R. Doc. 174-4.) Finally, an April 9, 2007 letter of intent memorializes the terms by which Simply Blue exercised its option to renew the agreement for the four-year period beginning on July 1, 2007. (Bankr. R. Doc. 174-5.) Though the letter of intent provided some new terms, such as additional renewal options, it did not alter the terms of the WGW Agreement in any way relevant to this appeal.

WGW offers three arguments for why this language does not provide for expiration of the trademark sublicense on June 30, 2003. First, WGW claims that it had no authority under its agreement with JAG to enter into any other form of agreement with Simply Blue than a sublicense. However, the agreement with JAG does not purport to limit WGW's ability to contract with Simply Blue or anyone else for services. Instead, it simply limits WGW's ability to offer sublicenses. (Bankr. R. Doc. 174-1 ¶ 2.2.) Second, it relies on the fact that the First Amendment never mentions expiration or termination of the sublicense to argue that the First Amendment extended the sublicense indefinitely. However, the First Amendment clearly states that all terms and conditions previously effective after December 31, 2002, would now become effective six months later. (Bankr. R. Doc. 174-3 ¶ 2.) Given that the original agreement had provided for the sublicense's expiration on December 31, 2002, the plain language of the First

Amendment provided for that expiration to occur on June 30, 2003, even if it did not include explicit reference to that event. Third, WGW argues that because the letter of intent provides for sales volume minimums for the sale of JAG jeans, and because such sales volume minimums are typical of license agreements, the agreement must have continued as a license agreement beyond 2003. However, the fact that the agreement contained some term typical of a license agreement does not thwart the express language providing for the sublicense's expiration.

WGW also attempts to provide the Court with extrinsic evidence in support of its position. However, just as the Bankruptcy Court decided the issue on the language of the contract, the Court finds that resort to extrinsic evidence is unnecessary. Moreover, the Court is skeptical of WGW's attempts to offer the evidence under the guise of a response to the Purchasers' supposed complaint that the Bankruptcy Court did not hear extrinsic evidence. The Court is unable to discern any such complaint from the Purchasers' briefs.

## *CONCLUSION*

For the above reasons, the Court GRANTS the Purchasers' motion, but interprets it as a motion for substitution under Rule 7025, and substitutes the Purchasers for the Debtors as a party to this appeal. The Court also denies WGW's motion to dismiss. Finally, the Court reverses the Bankruptcy Court's order and remands the case for further proceedings in accordance with this opinion.

IT IS SO ORDERED.

6/8/10
Dated

Hon. William J. Hibbler
United States District Court